**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

JOSE IGNACIO SANDOVAL,

                Defendant.

No. CR13-3003-MWB

**ORDER REGARDING
MAGISTRATE'S REPORT AND
RECOMMENDATION CONCERNING
DEFENDANT'S MOTION TO
SUPPRESS**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**.............................................................................. 2
    A.   *Procedural Background* ........................................................ 2
    B.   *Factual Background* .............................................................. 3

II.   **LEGAL ANALYSIS** ...................................................................... 7
    A.   *Standard Of Review* .............................................................. 7
    B.   *Objections To Report And Recommendation* ............................. 12
        1.   *Staleness* ................................................................. 12
        2.   *Significance of noncompliance with state law* ..................... 15
        3.   *Reliability of informants other than Poole* ......................... 16
        4.   *Information connecting Sandoval to "Nacho"* ..................... 18
        5.   *Leon good faith exception* ............................................. 19
        6.   *Sandoval's statements* ................................................. 20

III.  **CONCLUSION** .......................................................................... 21

# I.    INTRODUCTION

## A.    Procedural Background

On January 13, 2013, an Indictment was returned against defendant Jose Ignacio Sandoval and a co-defendant charging conspiracy to distribute 500 grams or more of a substance or mixture containing methamphetamine which contained 50 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Defendant Sandoval filed a motion to suppress in which he seeks to suppress all evidence seized as a result of the search of his house pursuant to a search warrant, as well as any statements he made in a post-*Miranda* interview. Sandoval contends that the search warrant lacked probable cause for three reasons: (a) the information in the affidavit was stale, (b) the informants' statements were unreliable and (c) there was not a sufficient correlation or nexus that connected him or his residence to information about "Nacho." He also argues that the *Leon* good-faith exception to the exclusionary rule, *see United States v. Leon*, 468 U.S. 897 (1984), should not apply because law enforcement officers could not have acted in good faith reliance on the search warrant.

The prosecution filed a timely resistance to Sandoval's motion. Sandoval's motion to suppress was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). On August 26, 2013, Judge Strand conducted an evidentiary hearing and subsequently filed a Report and Recommendation in which he recommends that Sandoval's motion to suppress be denied. In his Report and Recommendation, Judge Strand concluded that the information in the search warrant application was not stale. Judge Strand further determined that the issuing judge could reasonably consider and rely upon the information from all of the informants mentioned in the search warrant application to conclude that probable cause existed. Judge Strand noted that, while the search warrant application did not contain specific information concerning the credibility of five informants, these informants could reasonably be

considered reliable because the information they supplied was corroborated by independent evidence. Based on the totality of circumstances, Judge Strand found that probable cause supported the state judge's issuance of the search warrant. Alternatively, Judge Strand concluded that, if the search warrant application was not supported by probable cause, the *Leon* good-faith exception to the exclusionary rule applies because the law enforcement officer obtaining the search warrant acted in reasonable reliance on the state magistrate's determination of probable cause for issuance of the warrant. Therefore, Judge Strand recommended that Sandoval's motion to suppress be denied.

Defendant Sandoval has filed objections to Judge Strand's Report and Recommendation. The prosecution filed a timely response to Sandoval's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Sandoval's motion to suppress.

## B.    *Factual Background*

In his Report and Recommendation, Judge Strand made the following factual findings:

> On January 9, 2013, Special Agent Eric Young submitted an application for a search warrant to the Iowa District Court for Hamilton County. Def. Ex. A (Doc. No. 110-2 at 1). The application sought the issuance of a warrant to search a residence located at 1879 Stonega Avenue in rural Hamilton County, along with three vehicles. *Id.* The application included supporting affidavits executed by Young. Doc. No. 110-2 at 2-6, 10-11. In his affidavits, Young provided information he had gathered from several informants and agents concerning Sandoval who, according to sources, went by "Nacho."
>
> Young first described information obtained from Christopher Hawken, who had been arrested for drug

activity and had given a post-*Miranda* statement on December 30, 2012. Hawken said he had been purchasing methamphetamine from Jeremy Roberts. Roberts told Hawken he got his methamphetamine from a black male named "JP" who was from Boone, Iowa. Young knew "JP" was James Poole from Boone, Iowa. He had also observed Poole's vehicle in the driveway of Hawken's residence. Roberts occasionally stayed at Hawken's residence so Hawken was able to observe Roberts' drug transactions with Poole. Roberts told Hawken that Poole was being supplied with methamphetamine by a Mexican male named "Nacho."

Young next stated that in early December of 2012, he spoke with Wright County Deputy Darren Robinson about information he had received relating to Jose Sandoval. Robinson told Young that Sandoval used the nickname "Nacho" and provided the address of Sandoval's residence near Webster City in rural Hamilton County. Robinson said different cooperating defendants had identified Sandoval as a source for methamphetamine distribution.

Young also stated that on May 22, 2012, officers with the North Central Iowa Narcotics task force interviewed Joseph Stetz, who was in custody at the Cerro Gordo County jail for forgery and theft charges. Stetz was a methamphetamine user and had learned how to manufacture the substance. Stetz described other sources of methamphetamine that he knew about, including a Mexican male from Webster City named "Nacho." Stetz had heard from Jimmy Morris that "Nacho" was his supplier. Morris told Stetz he had made "Nacho" $100,000 in a month by selling methamphetamine for him. Morris also told Stetz he had observed pails of methamphetamine in the back of "Nacho's" white Cadillac Escalade and had seen a table covered with cash from methamphetamine sales at "Nacho's" house.

Young further stated that on September 4, 2012, officers with the North Central Iowa Narcotics task force conducted a proffer interview with Pedro Delatorre at the

4

Fayette County jail. Delatorre stated he sold methamphetamine that he received from "Nacho." He did not know "Nacho's" real name, but knew that he drove a white Cadillac Escalade. Delatorre met "Nacho" through Morris. He purchased one to two ounces twice each month from "Nacho" for one and a half years. He also purchased cocaine from "Nacho."

Young next stated that he had consulted Department of Transportation records and found that two Cadillac Escalades were registered in Sandoval's name. In his description of the property to be searched, Young itemized two Cadillac Escalades by year, license plate and color, indicating that both were white.

Next, Young stated that on January 8, 2013, James Poole and his wife were pulled over by Trooper David Saldivar. A canine sniff of their vehicle resulted in a positive indication and a large quantity of methamphetamine (approximately one quarter pound) was recovered from the vehicle. Special Agent Bryant Strouse conducted a post-*Miranda* interview of Poole. During this interview, Poole stated he received methamphetamine from a Mexican male referred to as "Nacho." Poole described "Nacho's" residence as rural property located outside of Webster City and provided detailed directions of how to get there. These directions were consistent with Sandoval's address, previously provided by Robinson.

Poole also stated in his post-*Miranda* interview that he had been purchasing five to six ounces of methamphetamine from "Nacho" every three days for the last month. He stated that he owed "Nacho" $12,000 for the methamphetamine he was arrested with and that he had received it from "Nacho" shortly before he was pulled over. Poole told Strouse he conducted all of his transactions at "Nacho's" residence. He further stated that "Nacho" had told him he was supplying methamphetamine to others in Fort Dodge and Story City. According to Poole, when Poole was meeting with "Nacho" shortly before being

5

arrested, "Nacho" told him another individual who delivered drugs for him had just been arrested in Wright County with cocaine and methamphetamine. Young contacted Robinson, who told him he had arrested an individual with methamphetamine and cocaine that morning. Poole also stated that he had observed several guns at "Nacho's" residence, including an AK-47, AR 15 assault rifles, a .45 caliber handgun and a .380 caliber handgun.

Young attached "Affidavit B" to the search warrant application in support of the information Poole provided. Doc. No. 110-2 at 10-11. In this affidavit, he indicated Poole was reliable because (a) he was a mature individual, (b) he had supplied information twice in the past, (c) he had helped supply the basis for two search warrants, (d) he had provided past information that led to the discovery and seizure of stolen property, drugs or other contraband, (e) he had not given false information in the past and (f) the information he supplied for this investigation had been corroborated by law enforcement personnel. The affidavit included a summary of the information Poole had provided in the past and of his criminal history.

The Iowa District Court Judge found that the information provided by Young was sufficient to establish probable cause and issued the warrant. Doc. No. 110-2 at 12; *see also* Def. Ex. C (Doc. No. 110-4). He noted that a portion of the grounds for issuance was based on a named informant (Poole). Doc. No. 110-2 at 12. He found that the informant had given reliable information on previous occasions and that the information he had provided was reliable based on his past history, its corroboration with previous and current information and its consistency with previous witness interviews. *Id*.

During the hearing, Sandoval testified that when the search warrant was executed he was read his *Miranda* rights and asked to speak to a lawyer. He was then transported to the jail. After being in custody for several hours, Sandoval asked a jailer to contact Young because he wanted to make a

> statement. Young came to the jail and told Sandoval about
> the information Poole had provided against him. Sandoval
> then made incriminating statements to Young.

Report and Recommendation at 2-5. Upon review of the record, I adopt all of Judge Strand's factual findings.

## II.    LEGAL ANALYSIS

### A.    Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made. A judge of
> the court may accept, reject, or modify, in whole or in part,
> the findings or recommendations made by the magistrate
> judge. The judge may also receive further evidence or
> recommit the matter to the magistrate judge with
> instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article
> III judge of any issue need only ask. Moreover, while the
> statute does not require the judge to review an issue *de novo*
> if no objections are filed, it does not preclude further review
> by the district judge, sua sponte or at the request of a party,
> under a *de novo* or any other standard.

7

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this

"specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear

error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always

remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[1]

---

[1]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. See *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir.

As noted above, Sandoval has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Sandoval's motion to suppress.

## B.    Objections To Report And Recommendation

### 1.    Staleness

Sandoval initially objects to Judge Strand's conclusion that the information contained in the search warrant application was not stale. Sandoval contends that the information provided by informants was stale and that, as a result, probable cause did not exist at the time the search warrant was issued.

"It is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005); *see United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998); *United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir. 1995). Therefore, a lapse of time, between the observations of a witness and the issuance of a search warrant "may make probable cause fatally stale." *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995). "'There is no bright-line test for determining when information in a warrant is stale.'" *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (quoting *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008)); *see United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010); *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007). Instead, the Eighth Circuit Court of Appeals has instructed that: "'We have no 'fixed formula' for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched.'" *United States*

2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

*v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) (quoting *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006) (citation omitted)); *see Maxim*, 55 F.3d at 397. Thus, the passage of time alone is "not always the controlling factor," since other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," may also be relevant to the staleness calculus. *Maxim*, 55 F.3d at 397 (citing *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). Moreover, "'where recent information corroborates otherwise stale information, probable cause may be found.'" *United States v. Kattaria*, 553 F.3d 1171, 1176 (8th Cir. 2009) (quoting *Ozar*, 50 F.3d at 1446 (quoting in turn *United States v. Macklin*, 902 F.2d 1320, 1326 (8th Cir. 1990) (internal quotation marks omitted)). "The passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature." *United States v. Jones*, 801 F.2d 304, 314 (8th Cir.1986); *see United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008) ("'[W]here continuing criminal activity is suspected, the passage of time is less significant.'") (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)). The Second Circuit Court of Appeals has noted: "'[N]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness.'" *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990). The Eighth Circuit Court of Appeals has similarly observed that: "'In investigations of ongoing narcotic operations, "intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.'"" *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (quoting *Formaro*, 152 F.3d at 771); *see United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) ("'With respect to drug trafficking, probable cause may continue for several weeks, if not months, of the last reported instance of suspect

activity.'") (quoting *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).

The search warrant application, here, reflects an investigation of an on-going drug trafficking operation. Because ongoing criminal conduct was suspected here, the passage of time is less significant. *See Jeanetta*, 533 F.3d at 655; *Formaro*, 152 F.3d at 771; *Jones*, 801 F.2d at 314. Here, however, the search warrant application detailed Poole's purchase of a quarter pound of methamphetamine from "Nacho" the day before. The search warrant application further noted that this was not an isolated transaction between the two, but that Poole admitted to having purchased five to six ounces of methamphetamine from "Nacho" every three days for the last month, and that all of these transactions had been conducted at "Nacho's" rural residence outside Webster City. The search warrant application further contained Poole's description of "Nacho's" residence and detailed, turn-by-turn, directions to it. The search warrant application also noted that Poole's directions were consistent with the directions needed to arrive at Sandoval's residence.

The search warrant application was further supported by Poole's statement that, at their meeting the day before, "Nacho" told him another individual who delivered drugs for him had just been arrested in Wright County with cocaine and methamphetamine. The search warrant application noted that Wright County Deputy Darren Robinson's arrest of an individual with methamphetamine and cocaine that morning corroborated Poole's statement. Finally, Poole's recent statement corroborated older information previously received from Stetz, Delatorre, and Hawken regarding "Nacho's" involvement in an ongoing drug distribution enterprise.

Thus, considering the totality of the information provided to the state judge, I conclude the search warrant for Sandoval's residence was not based on stale information. *See Smith*, 266 F.3d at 905 (holding that information in the affidavit

regarding three controlled buys at defendant's residence occurring three months prior to application for search warrant not stale); *United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001) (concluding that a drug transaction one month prior to the search warrant application did not constitute stale information in light of the ongoing nature of the crime); *see also United States v. Feliz*, 182 F.3d 82, 87 (1st Cir.1999) (holding that three-month-old evidence of drug transactions not stale and noting that "courts have upheld determinations of probable cause in trafficking cases involving similar or even longer periods"). Therefore, this objection is overruled.

### 2. *Significance of noncompliance with state law*

Sandoval also objects to Judge Strand's determination that any noncompliance by Special Agent Young with the technical requirements of Iowa Code § 808.3 is irrelevant in determining probable cause in a federal prosecution.[2] Sandoval's objection fails to recognize that "'[w]hen evidence obtained by state law enforcement officers is offered in a federal prosecution, the legality of the search and seizure is not determined by reference to a state statute, but rather is resolved by [F]ourth [A]mendment analysis.'" *United States v. Kelly*, 652 F.3d 915, 917 (8th Cir. 2011) (quoting *United States v. Maholy*, 1 F.3d 718, 721 n. 4 (8th Cir.1993) (quotation and citations omitted); *accord United States v. Howard*, 532 F.3d 755, 760 (8th Cir. 2008).

---

[2] Section 808.3 states in pertinent part:

> [I]f the grounds for issuance are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given. The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant.

IOWA CODE § 808.3.

In *United States v. Cote*, 569 F.3d 391 (8th Cir.2009), the defendant argued that an Iowa state court judge violated another provision of Iowa Code § 808.3 in failing to record supplemental testimony presented in support of a search warrant application. *Id.* at 393. The court determined that the alleged violation was irrelevant in a federal prosecution:

> Iowa Code § 808.3, which requires an abstract of witness testimony that serves as a basis for granting a warrant application, is also inapplicable in Cote's case. "In a federal prosecution, we evaluate a challenge to a search conducted by state authorities under federal Fourth Amendment standards." *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir.1994) (citing *United States v. Johnson*, 12 F.3d 827, 835 (8th Cir.1994), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L.Ed.2d 472 (1995)). "'[E]vidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because state law was violated.'" *Id.* (quoting *United States v. Moore*, 956 F.2d 843, 847 (8th Cir.1992)). Because we conclude the warrant in Cote's case did not violate the Fourth Amendment, we need not determine whether Judge Spande's failure to record Officer Fort's supplementary testimony constituted a violation of Iowa law.

*Id.*

Thus, Sandoval's claim that Special Agent Young failed to comply with Iowa Code § 808.3 is irrelevant to determining whether the fruits of the search are admissible in federal court and his objection is overruled.

### 3. *Reliability of informants other than Poole*

Sandoval further objects to Judge Strand's consideration of the information supplied by informants other than Poole in his probable cause analysis. Sandoval argues that because the search warrant application did not contain affidavits attesting to

their credibility, their information must be considered unreliable and excluded from any probable cause analysis.

"The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citing *Draper v. United States*, 358 U.S. 307, 313 (1959)); *accord United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011); *United States v. Nieman*, 520 F.3d 834, 839–40 (8th Cir. 2008); *United States v. Warford*, 439 F.3d 836, 839 (8th Cir. 2006). "Although 'an informant's veracity, reliability and basis of knowledge are all highly relevant' in determining whether probable cause exists when an affidavit is based on hearsay information, they are not 'entirely separate and independent requirements to be rigidly exacted in every case.'" *United States v. Steven*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (internal quotations omitted). Rather, I "must weigh an informant's statements in the context of all of the circumstances." *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001). "Even the corroboration of minor, innocent details can suffice to establish probable cause." *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (quotation marks omitted)).

Judge Strand recognized that Special Agent Young only submitted an "Informant's Attachment" for Poole. This reflected Special Agent Young's primary reliance on the information received from Poole. Poole's basis of knowledge for the information he provided is well established: he admitted participating recently in drug trafficking with "Nacho." Poole described his purchases of methamphetamine from a Mexican male known as "Nacho," including his purchase that very day, and gave detailed directions to "Nacho's" house from Webster City. Judge Strand cogently noted that if Poole had known that "Nacho" was Sandoval, no other information would have been necessary to support the application for a search warrant. The missing

information, regarding "Nacho's" identity, was supplied by Deputy Robinson, and not one of the informants. Deputy Robinson also provided Special Agent Young with the address of Sandoval's residence near Webster City in rural Hamilton County. The detailed directions supplied by Poole matched the address previously provided by Deputy Robinson.

The information from the other informants was consistent with, or corroborated, other information Special Agent Young received. For example, both Stetz and Delatorre independently provided information that "Nacho" drove a white Cadillac Escalade. Special Agent Young corroborated this information by checking DOT records which revealed that Sandoval owns two white Escalades. Hawken provided information that Poole was being supplied by a Mexican male named "Nacho." This was corroborated by Poole's own statement. Stetz stated that a Mexican male from Webster City named "Nacho" was a source of methamphetamine. Stetz's information was entirely consistent with Poole's statement. Finally, Delatorre also stated that he received methamphetamine from a person named "Nacho."

As previously mentioned, in determining whether probable cause exists, I do not evaluate each piece of information independently; rather, I must "consider all of the facts for their cumulative meaning. *Tyler*, 238 F.3d at 1038; *see United States v. Morales*, 923 F.2d 621, 623-24 (8th Cir. 1991). Considering the totality of the circumstances, I find that it was reasonable for the issuing judge to consider and rely upon the information from all of the informants to conclude that probable cause existed. Sandoval's objection is overruled.

### 4. *Information connecting Sandoval to "Nacho"*

Sandoval also argues that Judge Strand erred in finding that there was sufficient evidence connecting Sandoval and his residence to information regarding "Nacho." The discussion in the preceding section applies equally here. Deputy Robinson

provided Special Agent Young with Sandoval's address and informed him that Sandoval went by the name "Nacho." When Poole was interviewed, he described his methamphetamine purchases from "Nacho" and provided detailed driving directions to "Nacho's" residence. Poole's directions matched Sandoval's address. Stetz and Delatorre both independently stated that "Nacho" drove a white Cadillac Escalade. Special Agent Young's review of DOT records revealed that Sandoval owns two white Escalades. As a whole, all of the information collected by Special Agent Young provides sufficient facts to lead a prudent person to believe that there is a "fair probability" that contraband or evidence of a crime would be found at Sandoval's address. *See United States v. El-Amin*, 574 F.3d 915, 923 (8th Cir. 2009) (noting that if an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established); *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (same); *United States v. Grant*, 490 F.3d 627, 631–32 (8th Cir. 2007) (same); *Warford*, 439 F.3d at 841 (same); *United States v. Johnson*, 64 F.3d 1120, 1126 (8th Cir. 1995) (same). This objection is also overruled.

### 5. *Leon good faith exception*

Sandoval also objects to Judge Strand's conclusion that, even if the search warrant application failed to establish probable cause to believe that evidence of criminal activity would be found at Sandoval's residence, the search is lawful under the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984).

"The Fourth Amendment commands that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.'" *United States v. Houst*on, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting in turn U.S. CONST. amend. IV)). "'The ordinary sanction for

police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression.'" *Houston*, 665 F.3d at 994 (quoting *Fiorito*, 640 F.3d at 345). However, in *Leon*, the United States Supreme Court held that evidence obtained pursuant to a subsequently invalidated search warrant need not be excluded from the prosecution's case in chief if the executing officers acted in objectively reasonable reliance on the issuing court's determination of probable cause and technical sufficiency. *Leon*, 468 U.S. at 922–23. *Leon's* good-faith exception does not apply:

> "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge 'wholly abandoned his judicial role' in issuing the warrant; (3) when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable'*; and (4) when the warrant is 'so facially deficient" that no police officer could reasonably presume the warrant to be valid.'"

*Houston*, 665 F.3d at 995 (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (emphasis in original)).

Here, no evidence exists in the record to suggest that the issuing judge did not remain neutral and detached when making his probable cause determination. Moreover, no evidence has been offered which would suggest that the state judge "wholly abandoned [his] judicial role." *See Leon*, 468 U.S. at 923. Therefore, I also overrule Sandoval's objection as to Judge Strand's *Leon* analysis.

### 6.    *Sandoval's statements*

Finally, Sandoval argues that Judge Strand should have recommended suppression of the statements he made following his arrest as the fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). In *Wong Sun*, the

seminal case defining the fruit of the poisonous tree doctrine, the United States Supreme Court articulated that derivative evidence, such as physical evidence, a confession, or the testimony of a witness, is not "'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Id.* at 488. Rather, derivative evidence must be suppressed as "fruit of the poisonous tree" if it was discovered by exploiting an illegal search. *See id.*; *see also Oregon v. Elstad*, 470 U.S. 298, 305-06 (1985) (noting that the "fruit of the poisonous tree" doctrine is drawn from *Wong Sun*, where "the Court held that evidence and witnesses discovered as a result of a search in violation of the Fourth Amendment must be excluded from evidence"). In determining whether to apply the "fruit of the poisonous tree" doctrine, a court must determine whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488. For the reasons previously stated, because I find that the state search warrant was valid, the fruit of the poisonous tree doctrine has no application here. Sandoval's objection is overruled.

### III.   CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's Report and Recommendation and deny defendant Sandoval's motion to suppress.

**IT IS SO ORDERED**.

**DATED** this 23rd day of October, 2013.

Mark W. Bennett
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA